NOTICE
This Order was filed under
Supreme Court Rule 23 and
is not precedent except in the
limited circumstances
allowed under Rule 23(e)(1).

2021 IL App (4th) 190443-U

NO. 4-19-0443

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
July 14, 2021
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Sangamon County |
| ERIC CUTLER, | ) | No. 17CF338 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Adam Giganti, |
| | ) | Judge Presiding. |

JUSTICE HOLDER WHITE delivered the judgment of the court.
Justices DeArmond and Steigmann concurred in the judgment.

**ORDER**

¶ 1   *Held*:   The appellate court remanded with directions where defense counsel failed to
strictly comply with Illinois Supreme Court Rule 604(d) (eff. July 1, 2017).

¶ 2        On April 12, 2017, a grand jury indicted defendant, Eric Cutler, on four counts of
first degree murder (720 ILCS 5/9-1(a)(1), (a)(2) (West 2016)).  On May 10, 2019, defendant
pleaded guilty to one count of first degree murder (720 ILCS 5/9-1(a)(2) (West 2016)), where
"defendant, having obtained the age of 18, without lawful justification struck [his son] M.C., age
2 months, about the head and body causing blunt force trauma, knowing said act created the
strong probability of death or great bodily harm to M.C., thereby causing the death of M.C."  In
exchange for defendant's guilty plea, the State agreed to dismiss the remaining charges and
recommend a sentencing cap  of 60 years' imprisonment, although defendant was eligible for an
extended-term sentence of 20 to 100 years.

¶ 3        On June 4, 2019, defendant filed a *pro se* motion to withdraw his guilty plea.  At a June 6, 2019, hearing on defendant's *pro se* motion, the trial court questioned defendant about his claims of ineffective assistance of plea counsel and continued the matter for counsel to file a certificate of compliance pursuant to Illinois Supreme Court Rule 604(d) (eff. July 1, 2017).  On June 14, 2019, defense counsel filed a certificate of compliance pursuant to Rule 604(d).  Also, following a June 14, 2019, hearing, the court denied defendant's *pro se* motion to withdraw his guilty plea.

¶ 4        On July 1, 2019, the trial court sentenced defendant to 60 years in prison. Following sentencing, on July 1, 2019, defense counsel filed a second certificate of compliance pursuant to Rule 604(d).  Defense counsel also filed a motion to reconsider defendant's sentence and a second motion to withdraw defendant's guilty plea.  On July 2, 2019, the court denied both motions.

¶ 5        Defendant appeals, arguing (1) the trial court erred in denying his motion to withdraw his guilty plea where (a) the record shows his plea was not entered knowingly and intelligently because defense counsel misunderstood the nature and consequences of his plea and (b) his plea was not voluntary as the State's actions improperly coerced him into the plea; (2) defense counsel failed to strictly comply with the requirements of Rule 604(d), where counsel failed to (a) review the transcript of the sentencing hearing, (b) amend the pleadings to adequately represent defendant's claims of error, and (c) provide necessary affidavits or evidentiary support; and (3) the trial court erred by failing to conduct an appropriate *Krankel* inquiry (see *People v. Krankel*, 102 Ill. 2d 181, 464 N.E.2d 1045 (1984)) where it did not sufficiently question defendant or defense counsel regarding the basis of defendant's claim that counsel failed to explain an "open" plea.  The State concedes defense counsel did not strictly

comply with Rule 604(d) and requests remand only for strict compliance with Rule 604(d). We remand with directions.

¶ 6                                             I. BACKGROUND

¶ 7            On April 12, 2017, a grand jury indicted defendant on four counts of first degree murder (720 ILCS 5/9-1(a)(1), (a)(2) (West 2016)) (counts I-IV). The charges alleged defendant caused the death of his two-month-old son, M.C.

¶ 8                                           A. Preliminary Hearing

¶ 9            During an April 23, 2019, status hearing, the State advised the trial court that defendant had previously been inaccurately admonished on the maximum possible penalty for the first three murder charges. Previously, defendant was incorrectly told he faced an extended term of 20 to 60 years on the first three counts. The State indicated that because the victim was under 12 years old at the time of death, defendant actually faced an extended term of 20 to 100 years in prison.

¶ 10           The State also informed the court that it made an offer agreeing not to seek an extended sentence if defendant pleaded guilty before the present court date. After discussion, and defense counsel expressing the need for more time to discuss the offer with defendant where they were under the impression the sentencing range was 20 to 60 years in prison, the State agreed to keep the offer available until the next court date of May 10, 2019. Then, defense counsel clarified, stating "we're calling it an *offer*, but it's just the expression of a willingness not to seek 60 to 100 if pleased [*sic*] open to—what count?" (Emphasis in original). The State responded, "We don't have a particular preference on the count." Thereafter, the court asked the State, "So where we're at right now is that the offer from the State is a plea to any of the four

counts and a cap of 60 years?" After the State responded in the affirmative, defense counsel agreed that was also her understanding.

¶ 11                                    B. Guilty Plea

¶ 12        At a May 10, 2019, hearing, defense counsel informed the trial court that defendant made two plea offers but the State rejected both offers, and the State "reassert[ed] their prior offer of an open plea with a cap of 60." Defense counsel stated that she explained the State's offer to defendant but "he had not given me any indication that he wishes to accept the open plea."

¶ 13        Defense counsel then made an oral motion to continue the trial date from May 13 to May 28 because she received several items of discovery from the State during the prior week and believed she needed to review and discuss the items with defendant. The discovery items included but were not limited to a report from the Department of Children and Family Services, emails suggesting one of the paramedics did not follow proper procedures, and extraction reports from two or three cell phones that belonged to defendant and M.C.'s mother. Defense counsel estimated the cell phone records alone contained over 1000 pages of material. The State objected to the continuance and argued, "there's no new information here that the [d]efense doesn't already have[.]" After considering the arguments of both parties and case law submitted by the State, the trial court denied defendant's motion to continue.

¶ 14        The State then related, "[W]e discussed at the last pretrial our offer for a cap of 60 will expire at the end of this hearing. It might be best to inquire of the [d]efendant if there's any chance at this time that he wants to plead guilty." The court asked defense counsel if she wished to address the State's offer, and counsel asked the court to address defendant directly. The State then indicated as follows:

"The State's offer is that the [d]efendant would plead open to a count of First Degree Murder. We are not particular on which one.

We would be seeking a range capped at 60, so the [d]efendant would be eligible for a 20 to 60 range, non-probation eligible. It would be served at 100%, and it would be followed by a three-year period of mandatory supervised release [MSR]."

¶ 15 The court asked defendant if he understood the State's offer. Defendant responded, "Yes I do." The court asked defendant if he had ample time to discuss the offer with his defense counsel and if she explained it to him. Defendant responded in the affirmative. The court asked defendant if he understood it was his decision to accept or reject the plea. Defendant responded, "Yes." The court asked defendant twice, "[Y]ou understand that it is your decision to either accept or reject the State's offer?" Defendant gave no response. The court then stated, "I'll just note for the record that we have been sitting here for a few minutes without any response from [defendant]." The court stated, "What I will add to that is continued silence is going to mean to me that you are rejecting the offer." The court once more asked defendant, "[D]o you accept or reject the offer that was made to you?" Defendant responded, "I accept."

¶ 16 When the court asked defense counsel if she needed to take a moment she responded, "I have not pre-gamed with him on the plea admonishments, so I'm happy to do that, or you can go right into it now if you want, but I haven't talked to him about all of the questions you'll be asking ***[.]" After a brief recess, the State provided the terms of the plea as follows:

- 5 -

"Your Honor, the plea would be to Count 3. The other counts would be dismissed, because they would merge in either case, but they will be dismissed to make the record a little clearer.

He would plead to Count 3, and the State agrees to cap its argument at 60 years. Typically, the range would be 20 to 100. As I explained, that would be served at 100%, three year MSR and non-probationable."

The court asked defense counsel and defendant if that was their understanding as well, and they responded in the affirmative. The court then asked defendant if defense counsel "explained to you what an open plea is?" Defendant responded, "Yes." After the court confirmed the terms of the plea, the court questioned defendant about his educational and medical history.

¶ 17 The court then admonished defendant pursuant to Illinois Supreme Court Rule 402(a) (eff. July 1, 2012). Specifically, the court admonished defendant regarding the charge and penalties, his right to a trial and representation, the rights he was giving up by pleading guilty, the right to confront witnesses and testify, and the waiver of a jury trial. Defendant acknowledged he understood the rights he was giving up. During admonishments, the court also asked defendant if he was satisfied with his defense counsel's representation. Defendant responded in the affirmative. The court then stated, "This is an open plea. So the parties are requesting a Pre-Sentence Investigation and a sentencing hearing, correct?" Both parties answered in the affirmative.

¶ 18 The State then provided a factual basis of the case as follows:

"Your Honor, if this matter were to proceed to trial, the State would present evidence and testimony demonstrating that on

or about March 30th, 2017, the [d]efendant struck M.C. about the head and body causing blunt force trauma and the death of M.C.

The [d]efendant knew there was a strong probability of death or great bodily harm to M.C., who was age two months.

The [d]efendant admitted to striking M.C.

He would be identified in open court, and these events occurred in Sangamon County."

Defense counsel stipulated to the factual basis.

¶ 19    Then, the following exchanged occurred:

"THE COURT:  Back to you, [defendant].  Have any force, threats[,] or promises been made to cause you to enter into this plea of guilty?

THE DEFENDANT:  No.

THE COURT:  Are you doing it, because—are you doing this of your own free will and because you believe it's what's best for you?"

THE DEFENDANT:  Yes.

THE COURT:  All right, knowing the nature of the charge against you and the possible penalties and your rights under the law, do you still wish to give up all of those rights that we covered earlier?

THE DEFENDANT:  Yes.

THE COURT: How do you plead to the charge of First

Degree Murder as contained in Count 3, guilty or not guilty?

THE DEFENDANT: Guilty."

The court accepted the plea, finding:

"The [d]efendant has been advised of his rights. The [d]efendant

desires to waive those rights and to plead guilty. The [d]efendant

understands the nature of the charge he has pled guilty to and the

possible penalties. I find that the plea is voluntary, and I find there

is a factual basis."

Subsequently, the court set the case for sentencing.

¶ 20          C. *Pro Se* Motion to Withdraw Guilty Plea and Rule 604(d) Certificate

¶ 21          On June 4, 2019, defendant filed a *pro se* motion to withdraw his guilty plea. In the motion, defendant alleged his defense counsel failed to explain to him the nature of an "open plea," and he felt forced and felt "he had no option" but to accept the open plea after the court's denial of the motion to continue where he otherwise would have gone to trial.

¶ 22          At a June 6, 2019, hearing on defendant's *pro se* motion, defense counsel informed the trial court that "within days, maybe the next business day," of defendant's guilty plea, defendant reached out to her asking her to file a motion to withdraw his guilty plea. Defense counsel stated she encouraged defendant to write his own motion to withdraw his guilty plea "for one reason being that he could more effectively allege my ineffectiveness than I can." A few weeks later, defendant's family members filed the motion for him. Defense counsel then stated, "And because it does allege my ineffectiveness, I would invite the Court to inquire of him directly to ascertain his claims of error as they relate to me."

¶ 23        The trial court addressed defendant as follows:

"THE COURT:  Okay.  And so I just basically want to say are you saying that [defense counsel] never spoke to you about what an open plea is?

THE DEFENDANT:  I never really explained what an open plea was until during the procedures of the open plea.

THE COURT:  Okay.  And during the proceedings, do you recall that an open plea was explained to you in open court?

THE DEFENDANT:  Yes, it was.

THE COURT:  And who explained it to you?

THE DEFENDANT:  You did, Your Honor.

THE COURT:  I did.  I went through it in detail what an open plea was, correct?

THE DEFENDANT:  Yes, you did.

THE COURT:  And you indicated that you understood that?

THE DEFENDANT:  Yes, Your Honor."

¶ 24        The trial court also asked defendant about his claim that he felt forced into the plea by the denial of defense counsel's motion to continue.  Defendant responded, "By not having the continuance, I felt like—I had no option because I wasn't getting a fair chance to go over it, discoveries that possibly could help me in my trial."  Further, defendant stated he was under duress and because "I wasn't getting no continuance that I had no fair shot at trial for real so I just, I chose to go with the open plea."  After continued discussion, the court asked

defendant, "Is there anything else you wish to add and tell me?" Defendant responded, "No, Your Honor." The court then asked defense counsel the same question. Defense counsel informed the court she still needed to file a certificate of compliance pursuant to Rule 604(d). The trial court continued the matter to allow defense counsel "to review and file any subsequent affidavit***[.]" Defense counsel then suggested the court make a finding under *Krankel* "right now whether or not you believe there's a meritorious claim of ineffectiveness such that would justify your appointment of counsel, separate counsel." The court responded as follows:

> "Okay. Understood. And I'm going to find that there's not. I believe that [defense counsel] explained the items to, and I remember, I went over in detail in open court explaining what the open plea was, and [defendant] had no questions at that time, indicated he had no questions. In fact, indicated he understood what it was."

¶ 25 On June 14, 2019, defense counsel filed a certificate of compliance pursuant to Rule 604(d). In the certificate, defense counsel stated (1) defendant entered an "open" guilty plea on May 10, 2019; (2) defendant filed a motion to withdraw his guilty plea "in order to adequately present his contentions of error with respect to the proceedings held in the above-captioned matters"; (3) counsel consulted with defendant to ascertain his contentions of error, specifically, his change of plea hearing on May 10, 2019; (4) counsel examined the transcript of the May 10, 2019, proceedings; and (5) counsel examined the trial court file.

¶ 26 At a June 14, 2019, hearing on defendant's *pro se* motion to withdraw his guilty plea, defense counsel informed the trial court that defendant's *pro se* motion was potentially

untimely where defendant filed it before sentencing. However, defense counsel asked the court to allow defendant's motion to withdraw his guilty plea, stating:

"It may not be timely but we are asking at this time, given the circumstances, given the late-breaking discovery and given the frame of mind that it put my client in to have his motion to continue denied, we're suggesting that he acted under duress and that he did not fully understand the rights that he was giving up."

Both the State and trial court agreed the court could rule on defendant's motion to withdraw guilty plea. Ultimately, the court denied defendant's *pro se* motion to withdraw his guilty plea. The court stated it already addressed the ineffective assistance issue and made a ruling on that issue at the prior hearing. As to the issue of duress, the court stated it went through the admonishments in detail with defendant, defendant had a choice to proceed to trial or take the open plea, and he chose to take the open plea.

¶ 27                                      D. Sentencing

¶ 28        On July 1, 2019, at the sentencing hearing, the State informed the trial court that based on the plea it had agreed not to seek a sentence of more than 60 years, even though defendant was extended-term eligible for a 60- to 100-year sentence. The court then heard evidence in aggravation and mitigation.

¶ 29        In aggravation, the State called two witnesses, forensic pathologist Nathaniel B. Patterson, M.D., and Detective Mike McMasters. Dr. Patterson participated in the autopsy of M.C. Dr. Patterson testified he observed evidence of trauma to M.C. where "[t]here were blunt force injuries of his head, of the trunk[,] and of the extremities." Over defense counsel's

objections, the State presented several autopsy photographs through Dr. Patterson, and Dr. Patterson stated, "This is the most severe case [of physical abuse to a child] I've seen."

¶ 30        Mike McMasters, a detective with the Sangamon County Sheriff's Office, testified that in 2017 he interviewed defendant while investigating the death of M.C. Detective McMasters testified that during the interview, defendant admitted "striking [M.C.] five to six times with the back of his hand" on the night M.C. died. Defendant also admitted he "whooped" M.C. when he was "fussing and whining." Detective McMasters testified defendant "demonstrated it for me. In his words, it wasn't that hard. He used the back of his hand, hit the table, hit his leg. He admitted he had some anger issues that let him get out of control a little bit." Defendant also admitted to hitting M.C. in the head.

¶ 31        Detective McMasters testified M.C.'s mother admitted she witnessed defendant "whoop" M.C. However, Detective McMasters testified M.C.'s mother later recanted her statement about defendant and became uncooperative.

¶ 32        In mitigation, defendant called one witness, Jarisha Watson. Watson, defendant's cousin, testified she had a good relationship with defendant. She allowed defendant to be around her children, and he was good with them. Defendant was protective of M.C. Watson testified she never observed defendant discipline the children, and she believed he was scared when he admitted to police that he "whooped" M.C.

¶ 33        The State recommended a sentence of 60 years in prison arguing the most important aggravating factor in this case was deterrence. Defense counsel recommended the minimum sentence of 20 years in prison, citing mitigating factors such as his lack of a criminal history and the hardship on his surviving child. The trial court considered the factual basis, the presentence investigation report, the history, the character and attitude of defendant, the evidence

in aggravation and mitigation, the arguments of the parties, and the cost of incarceration. Ultimately, the court sentenced defendant as recommended by the State—60 years in prison followed by 3 years of MSR. In sentencing defendant, the court stated, "[Q]uite honestly, I'm surprised that it's only 60 that's the maximum[.]"

¶ 34                                   E. Other Motions

¶ 35         After sentencing, also on July 1, 2019, defense counsel filed a second certificate of compliance pursuant to Rule 604(d). In the certificate, defense counsel recounted the procedural history of defendant's case. Defense counsel also stated she (1) consulted with defendant to ascertain his contentions of error, specifically, his change of plea; (2) examined the transcript of the May 10, 2019, proceedings; (3) examined the court file; and (4) "was present for the sentencing hearing on July 1, 2019."

¶ 36         Defense counsel also filed a motion to reconsider defendant's sentence and a second motion to withdraw defendant's guilty plea. In the motion to reconsider defendant's sentence, counsel claimed defendant's sentence was excessive and an abuse of discretion considering all of the evidence in mitigation and aggravation. Further, counsel argued the trial court gave too much weight to the factors in aggravation, specifically, the age of the decedent and the nature of the offense. Defense counsel also argued the court erred in admitting the autopsy photographs and allowing Dr. Patterson to testify that this was the "worst" case of child abuse he had witnessed.

¶ 37         In the second motion to withdraw defendant's guilty plea, defense counsel alleged that "[d]efendant pleaded guilty absent a knowing, intelligent[,] and voluntary waiver of his rights. He wishes to incorporate his *pro se* Motion to Withdraw Guilty Plea, filed June 4, 2019,

and arguments he made in support of that Motion in this 'Defendant's 2nd Motion to Withdraw Guilty Plea.' "

¶ 38    The next day, July 2, 2019, the trial court held a hearing on defendant's motions. First, the trial court considered defendant's motion to reconsider his sentence. After hearing arguments from the parties, the court denied the motion to reconsider defendant's sentence. The court found it properly admitted the evidence submitted at sentencing and properly considered the factors in aggravation and mitigation.

¶ 39    Next, the court heard arguments on the second motion to withdraw defendant's guilty plea. Defense counsel argued the court's denial of the continuance on May 10, 2019, surprised both her and defendant and "rattled [defendant's] cage." Thus, defendant "allowed himself to be rushed or coerced into a plea that he almost immediately regretted." Defense counsel further argued, "[Defendant] makes a combined claim that my ineffective assistance, as well as the coercion and the duress, that those two factors together robbed him of a full understanding of what he was doing that day. It took from him a knowing and voluntary waiver of his rights." The State argued defendant took advantage of its plea offer that was to expire that day, regardless of the continuance. Further, the State argued the question of duress was a separate issue and that a court's ruling on a continuance does not amount to a deprivation of someone's fundamental rights.

¶ 40    After hearing arguments from the parties, the court denied the second motion to withdraw defendant's guilty plea. Regarding ineffective assistance allegations, the court found it "did go through, in detail, the *Krenkel* [*sic*] inquiry, and a ruling was made in regards to that." As to the open plea, the court stated,

"In regards to his open plea, I have made it a practice. I have a very detailed recitation that I use in regards to an open plea, and I religiously read through it, and I try to take my time when I read through it. I believe that I do not rush anyone into making a decision. I do not do it from memory. I want to make sure I state it the same way literally every time so that I cover everything, and I believe that was done, and I think your client understood that, understood what was read to him, what was said to him, understood the advice you probably gave to him in regards to this, and that he also understood that the State's offer was expiring, and that if he did not accept responsibility as he did and plead guilty, that that offer was done and out the window.

I believe that the plea was voluntary. I have considered your pleadings. I have considered the arguments, and at this time I'm going to deny the Defendant's Second Motion to Withdraw Guilty Plea."

¶ 41        This appeal followed.

¶ 42        II. ANALYSIS

¶ 43        On appeal, defendant argues (1) the trial court erred in denying his motion to withdraw his guilty plea where (a) the record shows his plea was not entered knowingly and intelligently because defense counsel misunderstood the nature and consequences of his plea and (b) his plea was not voluntary as the State's actions improperly coerced him into the plea; (2) defense counsel failed to strictly comply with the requirements of Rule 604(d) where counsel

failed to (a) review the transcript of the sentencing hearing, (b) amend the pleadings to adequately represent defendant's claims of error, and (c) provide necessary affidavits or evidentiary support; and (3) the trial court erred by failing to conduct an appropriate *Krankel* inquiry where it did not sufficiently question defendant or defense counsel regarding the basis of defendant's claim that counsel failed to explain an "open" plea.

¶ 44　　　　The State concedes defense counsel did not strictly comply with Rule 604(d) and requests remand only for strict compliance with Rule 604(d). We accept the State's concession.

¶ 45　　　　"Rule 604(d) governs the procedure to be followed when a defendant wishes to appeal from a judgment entered upon a guilty plea." *In re H.L.*, 2015 IL 118529, ¶ 7, 48 N.E.3d 1071. As it relates to this appeal, Rule 604(d) provides as follows:

> "The defendant's attorney shall file with the trial court a certificate
> stating that the attorney has consulted with the defendant either by
> phone, mail, electronic means or in person to ascertain defendant's
> contentions of error in the sentence and the entry of the plea of
> guilty, has examined the trial court file and both the report of
> proceedings of the plea of guilty and the report of proceedings in
> the sentencing hearing, and has made any amendments to the
> motion necessary for adequate presentation of any defects in those
> proceedings." Ill. S. Ct. R. 604(d) (eff. July 1, 2017).

The supreme court requires strict compliance with the certification requirement of Rule 604(d). *People v. Janes*, 158 Ill. 2d 27, 35, 630 N.E.2d 790, 793 (1994). Where defense counsel has filed a facially valid certificate of compliance, we may still consult the record to determine whether she actually fulfilled her obligations under Rule 604(d). See *People v. Bridges*, 2017 IL

App (2d) 150718, ¶ 8, 87 N.E.3d 441.  Whether an attorney complied with Rule 604(d) is a question we review *de novo*.  *In re H.L.*, 2015 IL 118529, ¶ 6.

¶ 46    Here, on May 10, 2017, defendant pleaded guilty to one count of first degree murder.  On July 1, 2019, the court sentenced defendant to 60 years in prison.  On that same day, defense counsel filed a second certificate of compliance pursuant to Rule 604(d). In the certificate, defense counsel stated she (1) consulted with defendant to ascertain his contentions of error, specifically, his change of plea; (2) examined the transcript of the May 10, 2019, proceedings; (3) examined the court file; and (4) "was present for the sentencing hearing on July 1, 2019."  Also, on July 1, 2019, defense counsel filed a motion to reconsider defendant's sentence and defendant's second motion to withdraw his guilty plea.  Subsequently, the trial court denied both motions.

¶ 47    While defense counsel filed a Rule 604(d) certificate, the record shows defense counsel failed to examine the report of proceedings for the sentencing hearing or make any necessary amendments to the motions.  To adequately consider all potential errors in the sentence, defense counsel needed to examine the report of proceedings.  See *People v. Milian*, 2019 IL App (3d) 150212-B, ¶ 13, 130 N.E.3d 427.  The certificate only indicated defense counsel "was present for the sentencing hearing on July 1, 2019."  Moreover, defense counsel never asserted that she made necessary amendments to adequately present any defects that occurred during the proceedings.  Therefore, we find defense counsel failed to strictly comply with Rule 604(d).  Counsel's failure to comply with the requirements of Rule 604(d) requires us to remand this matter to the trial court for further proceedings.  Given we must remand for strict compliance with Rule 604(d), we decline to address, at this time, the other matters raised by defendant.

¶ 48 However, in light of the other issues raised by defendant but not addressed by this court, we direct the trial court, on remand, to appoint different counsel and conduct further proceedings consistent with Rule 604(d), including a hearing on any motion new counsel may elect to file and the filing of a proper Rule 604(d) certificate.

¶ 49 We direct the clerk of this court to provide copies of the parties' briefs filed on appeal in this matter to the trial court and the Sangamon County State's Attorney, who shall then provide a copy of the briefs to defendant's newly appointed counsel.

¶ 50                                III. CONCLUSION

¶ 51 For the foregoing reasons, we remand for further proceedings consistent with this decision.

¶ 52 Remanded with directions.