NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2023 IL App (4th) 220689-U

NO. 4-22-0689

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
April 5, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
|     Plaintiff-Appellee, | ) | Circuit Court of |
|     v. | ) | Sangamon County |
| ERIC CUTLER, | ) | No. 17CF338 |
|     Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Adam Giganti, |
| | ) | Judge Presiding. |

---

JUSTICE LANNERD delivered the judgment of the court.
Justices Harris and Doherty concurred in the judgment.

**ORDER**

¶ 1 *Held:* (1) Remand for compliance with Illinois Supreme Court Rule 604(d) (eff. July 1, 2017) is not required because the trial court received evidence relating to the allegations of error in defendant's motion to withdraw his guilty plea during a full and fair hearing on the motion.

(2) Defendant failed to establish the trial court abused its discretion in denying defendant's motion to withdraw his guilty plea.

¶ 2  On May 10, 2019, defendant, Eric Cutler, pleaded guilty to one count of first degree murder (720 ILCS 5/9-1(a)(2) (West 2016)) for striking M.C., who was two months old, about the head and body on or about March 30, 2017, causing blunt force trauma, knowing his actions created the strong probability of death or great bodily harm, which thereby caused M.C.'s death. In exchange for defendant's plea, the State agreed to dismiss the remaining charges and to recommend a sentencing cap of 60 years' imprisonment. Defendant was eligible for an extended-term sentence of 20 to 100 years.

¶ 3            On July 1, 2019, the trial court sentenced defendant to 60 years in prison. That same day, defense counsel filed a motion to reconsider defendant's sentence and a motion to withdraw defendant's guilty plea. On July 2, 2019, the court denied both motions. In his initial appeal, defendant raised a variety of issues, including defense counsel's failure to strictly comply with the requirements of Illinois Supreme Court Rule 604(d) (eff. July 1, 2017). The State conceded defense counsel did not strictly comply with Rule 604(d). This court agreed and remanded the case for strict compliance with Rule 604(d), directing the trial court to appoint defendant new counsel and conduct further proceedings consistent with Rule 604(d). *People v. Cutler*, 2021 IL App (4th) 190443-U, ¶ 47.

¶ 4            On June 13, 2022, defendant's new counsel filed a motion to withdraw defendant's guilty plea. On July 25, 2022, the trial court denied defendant's motion. Defendant appeals, arguing (1) his appointed counsel on remand failed to strictly comply with Rule 604(d) and (2) the court erred by denying his motion to withdraw his guilty plea because it (a) was not knowingly and intelligently entered by defendant because his trial counsel was ineffective and (b) was not voluntary because the acts of the State, the court, and his trial counsel improperly coerced defendant into entering the plea. We affirm the court's judgment.

¶ 5                                        I. BACKGROUND

¶ 6            On April 12, 2017, a grand jury indicted defendant on four counts of first degree murder (720 ILCS 5/9-1(a)(1), (a)(2) (West 2016)) for causing the death of defendant's son, two-month-old M.C. Defendant entered a not guilty plea. Two years later, at a status hearing on April 23, 2019, the State indicated defendant had been inaccurately advised that his sentencing range for the first three counts of the indictment was 20 to 60 years. Because M.C. was under 12 years of age, the State indicated the correct sentencing range would be 20 to 100 years on all counts

of the indictment. The State noted it believed defendant had already been correctly advised as to the sentencing range on count IV of the indictment. The record indicates the trial court advised defendant on April 4, 2017, he could be sentenced to between 20 years and natural life in prison on count IV of the State's original complaint against him.

¶ 7        Defendant's appointed trial counsel, Lindsay Evans, objected, arguing it was too late for the State to seek a different sentencing range. According to Evans, if defendant was convicted of anything, she would object to a sentence of more than 60 years. Evans noted defendant had been in custody over two years and it was the trial court's obligation to correctly admonish him. Evans argued she did not have to volunteer defendant was facing more time than the court believed. The State responded it could add an aggravating factor at any time prior to trial and had notified defense counsel of the applicable sentencing range prior to the hearing. The court allowed the late admonishment as to the correct sentencing range.

¶ 8        The State offered not to seek an extended-term sentence if defendant pled guilty. Evans stated defendant had not given her authority to negotiate with the State when he believed he was only subject to a 20- to 60-year sentencing range for counts I through III of the indictment. As to the State's offer, Evans said, "[W]e're calling it an *offer*, but it's just the expression of a willingness not to seek 60 to 100 years if [defendant entered an open plea to one charged count]." (Emphasis in original.) The State indicated the sentencing cap would be 60 years, it had no preference as to which count defendant pled, and it agreed to keep the offer open until May 10, 2019. The trial court suggested they hold the next status hearing on May 10, with a trial date of May 13.

¶ 9        On May 10, 2019, Evans told the trial court defendant made two negotiated plea offers to the State, which were rejected. She also noted the State had reasserted its prior offer of

an open plea with a 60-year sentencing cap. Evans indicated she explained the State's offer to defendant, but defendant had not indicated he wished to accept it. Evans then made an oral motion to continue the trial because the State had given her additional discovery that week, consisting of an additional coroner's report, coroner's photographs, a 63-page report from the Department of Children and Family Services (DCFS), a return on a search warrant issued two years earlier, a supplemental report by Detective Harth from the Sangamon County Sheriff's Office, a phone extraction on a flash drive for two or three cell phones comprising more than 1000 pages, a new interview with M.C.'s maternal grandmother, a walk-through video of defendant's apartment, and an e-mail indicating a Springfield Fire Department captain had concerns regarding M.C.'s medical treatment. Evans asserted she did not believe she could ethically move forward and provide effective assistance to defendant without examining this material and the potential issues it raised.

¶ 10         The State objected to the continuance, stating it had no prior notice defendant was going to ask for one. In addition, according to the State, much of the information in the disclosures at issue was either already provided to the defense, known about by the defense, recently discovered by the State, and/or contained "virtually nothing of substance." The State specifically noted the DCFS investigation report contained virtually nothing new except for information the defendant's mother and victim's mother provided about how each woman was coping with M.C.'s death. Further, the coroner's report and new photos contained nothing new. The State noted defense counsel had the search warrant for the phones (defendant's two phones and a phone belonging to M.C.'s mother, Vanity Johnson) and could have asked the State to review the data extractions at any time. The State also indicated it did not plan to introduce anything from the phone extractions. As for the grandmother's interview, the State noted she did not have much to add to the case, and it did not plan to call her as a witness but had subpoenaed her if the defense

wished to call her. The walk-through video was noted in discovery previously provided to Evans, the State did not plan to use it, and it captured the same area as the photos of the apartment. As for the Springfield Fire Department captain's concerns related to the care M.C. received, the State noted it turned the information over to defendant when it learned about it during pretrial conversations. Further, the State argued any testimony from the firefighter regarding his views on M.C.'s care from emergency medical providers was not admissible. While not conceding the first responders were negligent, the State noted any negligent medical care would not break causation started by defendant's conduct. The State noted it had already paid for travel arrangements and undertook measures for the trial to begin on May 13 as planned. The trial court denied defendant's motion to continue and indicated trial remained set for May 13, 2019.

¶ 11 The State then indicated its plea offer would expire at the end of the hearing. The State suggested the trial court ask defendant if he wanted to plead guilty. Defense counsel asked the court to address defendant directly regarding the plea. The court then indicated it was important to start defendant's admonishments from scratch. The State then advised defendant he was eligible for an extended-term sentence of 20 to 100 years on all four of the counts of the indictment, any sentence he received would be served in its entirety, he was not eligible for probation, and any prison sentence he received would be followed by a 3-year period of mandatory supervised release (MSR). According to the State, defendant could plead guilty to any of the counts alleging first degree murder, and the State would cap defendant's sentencing range at 60 years.

¶ 12 Upon questioning by the trial court, defendant said he understood the State's offer and had ample time to discuss the plea offer with trial counsel. Defendant also indicated he understood the decision to accept or reject the State's offer was his decision alone. The court then asked defendant twice over several minutes whether he intended to accept or reject the State's

offer. Defendant did not respond. The court then asked defendant again, indicating defendant's continued silence would be viewed as a rejection of the State's offer. Defendant then said he accepted the offer.

¶ 13　　　　The trial court then gave defendant time to consult with Evans. After a brief recess, the court indicated he had been informed defendant intended to enter a plea agreement. The State provided the terms of the agreement. Defendant would plead guilty to count III of the indictment in exchange for the State capping its sentencing recommendation at 60 years, the sentence would be served in its entirety, followed by 3 years of MSR, and defendant would not be eligible for probation. Defense counsel and defendant both indicated this was their respective understanding of the agreement.

¶ 14　　　　The trial court then asked defendant if Evans had explained what an open plea was. Defendant said yes. Before accepting the plea, the court admonished defendant pursuant to Illinois Supreme Court Rule 402 (eff. July 1, 2012). Evans indicated she believed defendant was mentally fit to proceed. Defendant said he was satisfied with the representation he received from Evans and another attorney, Tawnya Frioli, who was involved in the case. Further, defendant said he understood by pleading guilty he was admitting his guilt and would receive no other hearing in regard to his guilt or innocence.

¶ 15　　　　The trial court then asked whether the parties were asking for a presentence investigation and sentencing hearing since this was an "open plea." Defense counsel said yes. The State's factual basis for the plea indicated that on or about March 30, 2017, defendant struck M.C. about the head and body causing blunt force trauma and M.C.'s death, knowing a strong probability existed of M.C.'s death or great bodily harm. M.C. was two months old at the time. Defendant admitted striking M.C. Defense counsel then stipulated to the factual basis for the plea. In response

to the court's questions, defendant said no force, threats, or promises had been made to make him plead guilty, he was pleading guilty of his own free will, and he believed this was what was best for him. The court then asked defendant if he still wanted to give up his rights after knowing the nature of the charge against him, the possible penalties, and his rights under the law. Defendant said yes. The court found defendant's guilty plea was knowing and voluntary.

¶ 16    On June 4, 2019, defendant filed a *pro se* motion to withdraw his guilty plea. Defendant alleged Evans failed to explain to him the nature of an "open plea," and he felt he had no option other than to enter the plea after the motion to continue was denied. Defendant claimed he would have gone to trial had his attorney been given time to properly prepare. Defendant did not mention anything about his ability to appeal his sentence.

¶ 17    On June 6, 2019, the trial court held a hearing on defendant's *pro se* motion to withdraw. Evans indicated defendant and members of his family began calling her days after the plea, indicating defendant wanted to withdraw it. Evans indicated she met with defendant, discussed the situation, and encouraged him to draft his own motion to withdraw because he could be more effective in alleging her ineffectiveness. Evans invited the court to speak directly with defendant about his claims of her ineffective assistance. In response to the court's questions, defendant indicated Evans did not explain to him what an open plea was until "during the procedures of the open plea." Defendant acknowledged an open plea was explained to him by the court. Defendant also noted the court went through the terms of the plea in detail and defendant said he understood. The court then questioned defendant about his claim he believed he had no option other than to plead guilty because the trial court denied the defense's motion to continue, Evans would be unable to review the new discovery, and she would be unprepared for trial. When asked by the court, defendant said he understood the request for a continuance was denied.

Defendant also acknowledged he understood his only option was to either go to trial or enter into some type of plea agreement.

¶ 18        The trial court then asked Evans about the discovery material defendant referenced in his *pro se* motion. Evans told the court she had asked for a continuance because the State had provided her with a large amount of discovery during the week before trial. She continued, "So it's correct that I would not have had time—I had just received it myself, so it would be correct that he would not have spent any time reviewing the new discovery."

¶ 19        Evans told the trial court she still needed to file her Rule 604(d) certificate, so the court indicated it would continue the hearing. Evans also told the court it needed to make a determination pursuant to *People v. Krankel*, 102 Ill. 2d 181, 464 N.E.2d 1045 (1984), whether the court believed defendant had presented a meritorious claim Evans was ineffective. The court found defendant had not presented a meritorious claim and did not appoint a new attorney for defendant.

¶ 20        On June 14, 2019, the trial court reconvened to hear defendant's arguments on defendant's *pro se* motion to withdraw his guilty plea. Evans asked the court to allow defendant to withdraw his guilty plea because defendant acted under duress and did not fully understand the rights he was giving up by pleading guilty. According to Evans, when defendant entered his guilty plea, he was under duress because of the late discovery provided by the State and the court's denial of defendant's motion to continue. The court denied the motion.

¶ 21        On July 1, 2019, the trial court held a sentencing hearing. The State indicated—per the plea agreement—it would not seek an extended term, which made defendant's sentencing range 20 to 60 years. Evans noted defendant was not admonished he was extended-term eligible for two years while he was in custody. However, she conceded defendant had been admonished

- 8 -

correctly prior to entering his guilty plea.

¶ 22    The State called two witnesses in aggravation. Dr. Nathaniel Patterson, a forensic pathologist who participated in M.C.'s autopsy in 2017, testified he observed evidence of trauma to M.C., including blunt force injuries to his head, trunk, and extremities. Dr. Patterson testified this was the most severe case of child abuse he had seen. On cross-examination, Dr. Patterson testified he had been involved in roughly 10 cases of child abuse.

¶ 23    Detective Mike McMasters of the Sangamon County Sheriff's Office testified he interviewed defendant while investigating M.C.'s death. During the interview, defendant admitted striking M.C. five to six times with the back of his hand on the night M.C. died. This included two to three strikes to M.C.'s head. Defendant also admitted he "whooped" M.C. seven to eight times in the buttocks area when M.C. was fussing and whining.

¶ 24    On cross-examination, Detective McMasters testified two other detectives interviewed M.C.'s mother, Vanity Johnson. McMasters indicated Johnson and defendant were with M.C. when 911 was called and Johnson defended defendant throughout the investigation. However, McMasters also testified Johnson admitted she saw defendant "whoop" M.C. and told him to stop. Further, McMasters testified defendant said Johnson had nothing to do with M.C.'s death, placing all the blame on himself. McMasters also noted Johnson later sent a letter to law enforcement saying defendant could not have killed M.C.

¶ 25    Jarisha Watson, who was defendant's cousin, testified on defendant's behalf. Watson testified she and defendant had a good relationship and she allowed defendant to be around her children. According to Watson, defendant was good with her kids and was a protective father. Watson testified she had never seen defendant discipline the children and believed defendant must have been scared when he said he "whooped" M.C. Watson said she could not see defendant

committing the offense in this case.

¶ 26        The State asked the trial court to impose a 60-year sentence. Defense counsel asked for the minimum 20-year sentence. Defense counsel noted defendant had no history of criminal activity and his imprisonment would entail a hardship on his dependents. The court sentenced defendant to 60 years in prison and stated it was surprised 60 years was the maximum sentence. The court told defendant that if he wanted to challenge his sentence, he would need to file a motion to reconsider sentence within 30 days and any issue not raised in the motion would be deemed forfeited on appeal. If his motion was denied, he would have 30 days after the denial to file a notice of appeal.

¶ 27        On July 1, 2019, Evans filed her second Rule 604(d) certificate of compliance, a motion to reconsider defendant's sentence, and a second motion to withdraw defendant's guilty plea. The motion asked the trial court to incorporate defendant's *pro se* motion to withdraw and alleged defendant's guilty plea was not a knowing, intelligent, and voluntary waiver of his rights.

¶ 28        On July 2, 2019, the trial court held a hearing on defendant's second motion to withdraw his guilty plea and his motion to reconsider his sentence. Evans asked the court to reconsider the sentence because the court gave too much weight to the aggravating factors and not enough weight to the mitigating factors, which included defendant's age and lack of criminal history. Evans also argued the court erred in overruling defendant's objection to allowing the State to use 28 autopsy photos during the sentencing hearing and by allowing Dr. Patterson to testify this was the worst case of child abuse he had been involved in. The court ruled the evidence was properly submitted and allowed. In addition, the court noted it had taken a lot of time to review the factors in mitigation and aggravation. The court denied defendant's motion to reconsider his sentence.

¶ 29 Regarding the second motion to withdraw defendant's guilty plea, Evans indicated procedurally this was the proper time to argue the motion. However, according to Evans, the prior motion was important because it provided the trial court with early notice of defendant's wish to withdraw his plea. Evans noted the State provided her with discovery in the week prior to defendant's scheduled trial and both she and defendant expected the court to grant her motion to continue on May 10, 2019. The court's denial of the continuance put defendant "off of his game." Defendant then allowed himself to be rushed into a guilty plea, which he almost immediately regretted. Evans indicated defendant was making a combined claim that her ineffectiveness along with the coercion and duress robbed him of fully understanding what he was doing when he entered his plea. Incorporating defendant's arguments from his *pro se* motion to withdraw filed on June 4, 2019, Evans stated defendant felt rushed into his plea and believed Evans was ineffective because she and defendant did not have time to review the new discovery. Evans acknowledged she did not have time to go over the new discovery provided by the State. Finally, Evans indicated defendant was young, unsophisticated, and inexperienced with regard to the criminal justice system.

¶ 30 The State argued that defendant was responding to the State's offer to cap its sentencing recommendation at 60 years, which was set to expire regardless of whether the motion to continue was allowed. Defendant had been aware of the offer for several weeks and was doing his best to take advantage of it.

¶ 31 The trial court indicated it had earlier engaged in a *Krankel* inquiry and made a ruling Evans was not ineffective. With regard to defendant's "open plea," the court noted it had a practice of reading a detailed script when a defendant was entering an "open plea." The court indicated defendant understood the court's admonishments, understood the advice he received

from defense counsel, and also understood the State's offer was expiring. Further, the court noted it believed the plea was voluntary. The court denied defendant's second motion to withdraw his guilty plea.

¶ 32        Defendant appealed, and this court remanded the case to the trial court because Evans's Rule 604(d) certificate failed to strictly comply with the rule. This court directed the trial court to appoint different counsel and conduct further proceedings consistent with Rule 604(d), including a hearing on any motion defendant's new counsel might choose to file and the filing of a proper Rule 604(d) certificate. See *Cutler*, 2021 IL App (4th) 190443-U, ¶¶ 47-49.

¶ 33        On remand, the trial court appointed attorney Paul Appleton to represent defendant. On June 13, 2022, Appleton filed another motion to withdraw defendant's guilty plea. The motion restated defendant's claims from his *pro se* motion to withdraw filed on June 4, 2019. Further, the motion alleged Evans did not properly explain or understand the consequences of defendant's plea, doubt existed as to defendant's guilt because of alleged inculpatory statements made by Johnson, and justice would be better served if defendant were allowed to withdraw his plea and a trial was held. In addition, the motion claimed defendant did not enter his plea knowingly and intelligently because Evans did not properly explain the agreement to him. Had the plea been properly explained, defendant claimed he would not have accepted it. Next, the motion alleged defendant was not told he could not challenge his sentence on appeal.

¶ 34        The motion also alleged Evans provided deficient representation because she failed to investigate the case and search for exonerating evidence, including jailhouse phone calls between defendant and Johnson, where defendant alleged Johnson said she was the guilty party. According to defendant, Evans did meet with Johnson. However, Johnson left the meeting when she learned what would happen if she incriminated herself regarding M.C.'s death. Defendant

argues a reasonable response from Evans would have been to investigate Johnson's culpability, list her as a defense witness, and plan on subpoenaing her to testify at defendant's trial. The motion also alleged (1) doubt existed as to defendant's guilt, (2) the case should be decided by a jury, and (3) defendant's plea was not voluntary because he was coerced into pleading guilty.

¶ 35　　　　Appleton attached defendant's affidavit to the motion to withdraw. According to the affidavit, defendant was overwhelmed with anxiety when the State admonished him on April 23, 2019, that the correct sentencing range for all of his charged offenses was 20 to 100 years. Defendant said he felt cornered, scared, and could not think when he learned he would have to decide that day whether to accept the State's plea offer. Although the State eventually extended the plea offer to May 10, 2019, defendant learned from Evans before the hearing that the State had given her a large amount of new discovery that she would not be able to review before his scheduled trial on May 13, 2019. Evans said she was going to ask for a continuance so she could review the material. When the trial court denied the motion to continue on May 10, 2019, defendant claimed he knew Evans could not review the recently provided material and be ready for trial on May 13, 2019. Defendant also stated Evans told him he would likely receive a sentence on the lower end of the sentencing range if he agreed to the plea deal. Because his attorney would not be prepared for his trial, defendant believed he would be found guilty if he went to trial—even though he said he was innocent—and receive a 100-year sentence. Defendant stated he felt trapped and intimidated by everyone, including Evans, and did not know he could receive a 60-year sentence. According to defendant, it made no sense for him to plead guilty knowing he could get a 60-year sentence because both a 60-year sentence and a 100-year sentence would result in him dying in prison.

¶ 36　　　　Appleton also filed a certificate of counsel pursuant to Rule 604(d) utilizing the

form provided by our supreme court. Appleton also filed Evans's affidavit with the trial court, which stated Evans was no longer employed by the public defender's office, the physical file and electronic file generated by her while working as defendant's counsel was in the possession of the public defender's office, and she had "limited memory" of her work on the case without the benefit of the file.

¶ 37　　　On July 21, 2022, the trial court held a hearing on the motion to withdraw. Appleton stated defendant was requesting to withdraw his guilty plea because he received ineffective assistance of counsel, misapprehended the law at the time of his plea due to misrepresentations of his prior counsel, and his guilty plea was coerced and made under duress. Appleton indicated he had spoken to Evans but was not going to call her as a witness because counsel did not believe she could recall the details of the case and noted he had filed Evans's affidavit.

¶ 38　　　At the hearing, defendant testified he was 28, only attended high school until the tenth grade, and was unemployed before his incarceration. He said this was the first time he was ever arrested, Evans was his first lawyer, and he was ignorant of the law and the legal system. According to defendant, Evans was a good lawyer, whom he trusted and relied on for her legal advice. However, the large number of cases she was assigned affected her ability to have contact with him. On the day he entered his guilty plea, he had no intention to do so but "felt trapped and coerced" after the trial court denied the defense motion to continue. Without the continuance, defendant did not believe he would receive a fair trial because Evans would not be prepared.

¶ 39　　　Defendant also testified Evans had not explained the State's plea offer before the May 10, 2019, hearing. She talked to him about the offer in court but did not explain it in detail. Defendant claimed he would not have agreed to plead guilty if the plea had been properly explained. According to defendant, he believed he was only facing a 20-year sentence when he

entered his plea. Defendant said he relied on and followed Evans's advice to plead guilty even though he was innocent.

¶ 40    In addition, defendant claimed he felt like the State coerced him into pleading guilty because he claimed the hearing was unscheduled and he did not know anything about the e-mail the State sent Evans or the hearing. (We note it appears defendant, on this point, is confusing his plea hearing on May 10, 2019, with his court hearing on April 23, 2019, when the State's plea offer was first discussed.)

¶ 41    Defendant indicated M.C.'s mother, Vanity Johnson, suffered from depression and had postpartum depression in March 2017. She would yell at M.C. when he would cry, but he never saw her get physical with the baby. Johnson was distraught on March 30, 2017, and was the last person with M.C. before he stopped breathing. Defendant told Evans he believed Johnson was guilty. During conversations defendant had with Johnson while he was in jail, Johnson said she felt bad about defendant's situation and wanted to turn herself in to the police. Defendant believed she was going to turn herself in to the authorities, but she never did. To defendant's knowledge, Evans never reviewed the jailhouse phone calls between defendant and Johnson. Evans did tell defendant she met with Johnson, and Johnson asked what would happen if she said she did it and turned herself in. When Evans told Johnson she would be incarcerated, Johnson got up and left. Defendant testified he loved his son and did not kill him.

¶ 42    On cross-examination, defendant admitted he was with Johnson and the baby when the baby was found unresponsive. As for the meeting between Johnson and Evans, defendant was not present. Defendant said he remembered talking to detectives after M.C. was found dead but did not remember what he told the detectives. He did remember admitting M.C. was whining and he "whooped" him. Defendant also told the police he had never seen Johnson strike M.C. Further,

defendant knew Johnson might testify against him.

¶ 43　　　　Neither defendant nor the State called any other witnesses. Before Appleton and the State made their arguments, the trial court asked them to address the issue of whether this was a negotiated plea, a partially negotiated plea, or an open guilty plea. Appleton stated this was a partially negotiated plea, although the court previously described it as an open plea. Appleton noted defendant could not be expected to understand what kind of plea he was entering when the court and attorneys did not understand what kind of plea it was.

¶ 44　　　　According to Appleton, defendant would not have entered his guilty plea if he had been able to review the evidence the State disclosed to Evans the week before trial or if he had fully understood the possible consequences of his plea. Appleton argued defendant had a valid defense because the evidence showed Johnson was possibly guilty of the murder. Next, Appleton stated defendant's ability to answer procedural questions does not mean he was not under duress or fully understood what he was being asked. According to Appleton's argument, defendant did not know what he was pleading to or the possible consequences of his plea. Had he known what was going on during the May 10, 2019, hearing, he would not have entered a guilty plea. Appleton stated defendant was aware he could receive a 100-year sentence if he was allowed to withdraw his plea and convicted of murdering M.C. According to Appleton, both a 60-year sentence and a 100-year sentence are *de facto* life sentences for defendant.

¶ 45　　　　On July 25, 2022, the trial court issued a written order denying defendant's motion to withdraw his guilty plea. The court found Evans was not ineffective for " 'not properly explaining what an open plea was.' " According to the court, the transcript from the plea hearing contradicted defendant's assertion he did not understand the terms of his plea. In response to questions from the court, defendant indicated he understood the State's offer and had ample time

to discuss the State's offer with Evans. Sometime later during the hearing, the court paused the hearing so defendant could again confer with Evans. When the hearing resumed, defendant was twice admonished he would be pleading guilty to a charge of first degree murder and the State would cap its sentencing recommendation at 60 years. The court indicated it believed the admonishments defendant received cured any possible prejudice.

¶ 46　　　　The trial court also found Evans was not ineffective for filing a motion to reconsider defendant's sentence after the court imposed the 60-year sentence because nothing in section 5-4.5-50(d) of the Unified Code of Corrections (730 ILCS 5/5-4.5-50(d) (West 2018)) bars a defendant from filing a motion to reconsider sentence after a partially negotiated plea. Further, the court found defendant was not prejudiced by Evans filing a motion to reconsider his sentence.

¶ 47　　　　As for defendant's argument Evans failed to understand defendant would be barred from challenging his sentence on appeal without first withdrawing his guilty plea, the trial court indicated no evidence had been presented that defendant's appeal rights had any impact on his decision to plead guilty. Defendant did not mention his appeal rights in either his June 4, 2019, *pro se* motion to withdraw or at the June 6, 2019, hearing. Further, no mention of defendant's appeal rights was made in his second motion to withdraw his guilty plea filed on July 1, 2019. Finally, the court stated defendant gave no indication he entered his guilty plea because of his appeal rights in his December 27, 2021, affidavit. Instead, defendant declared he felt "trapped" by the court's denial of his motion to continue the case. The court found defendant failed to establish he would not have pled guilty but for Evans's alleged errors.

¶ 48　　　　The trial court also found no evidence had been presented that defendant pled guilty under a misapprehension of the law and that defendant had not established doubt existed as to his guilt. According to the court, defendant provided a recorded statement to the police in which he

admitted "whooping" M.C. because he was "whining," and placed blame for M.C.'s death solely on himself. The court noted the evidence described at the sentencing hearing was overwhelming. Further, the court noted defendant had not presented any reason for the court to question his guilt or established justice would be better served by allowing defendant to have a trial.

¶ 49       The trial court also found defendant's guilty plea was not coerced because his May 10, 2019, motion to continue was denied. The court noted the State had contested defendant's motion to continue and stated the vast majority—if not all—of the additional discovery given to defense counsel was redundant, irrelevant, or should have been known to Evans. With regard to the timing of the revocation of the plea, defendant had been aware for multiple weeks that the offer would be withdrawn after the hearing on May 10, 2019.

¶ 50       This appeal followed.

¶ 51                                  II. ANALYSIS

¶ 52                          A. Compliance with Rule 604(d)

¶ 53       We first address defendant's argument Appleton failed to comply with Rule 604(d). On this question, we apply a *de novo* standard of review. *People v. Prather*, 379 Ill. App. 3d 763, 768, 887 N.E.2d 44, 47 (2008). Defendant does not argue Appleton's Rule 604(d) certificate did not facially comply with Rule 604. However, defendant argues this should not be the end of our analysis. On this point, we agree with defendant. In *People v. Curtis*, 2021 IL App (4th) 190658, ¶ 32, 186 N.E.3d 467, this court stated a facially valid Rule 604(d) certificate may be refuted by the record in a case.

¶ 54       In this case, defendant argues Appleton's motion to withdraw defendant's guilty plea does not satisfy the requirements of Rule 604(d) because he failed to attach an affidavit or other evidentiary support for the allegation in the motion regarding statements made by Johnson

- 18 -

during jailhouse phone calls with defendant. Rule 604(d) states that when a motion to reconsider sentence or a motion to withdraw a guilty plea "is based on facts that do not appear of record[, the motion] shall be supported by affidavit unless the defendant is filing the motion *pro se* from a correctional institution." Ill. S. Ct. R. 604(d) (eff. July 1, 2017). While acknowledging Appleton submitted affidavits from defendant and Evans, defendant argues neither of these affidavits addressed the substance of defendant's claim Evans was ineffective for not investigating Johnson's culpability, which put defendant's guilt in question.

¶ 55      Defendant contends his testimony at the July 21, 2022, hearing on his motion to withdraw his guilty plea about Johnson's phone calls with him and her meeting with Evans suggests he would have had a valid defense at trial. However, according to defendant's brief:

> "[T]his information does not address the factual basis for the claim of counsel's ineffective assistance where it does not establish what actions [Evans] took or failed to take in investigating this defense. Neither did it provide sufficient support for the allegation of [defendant's] innocence, or at least that the question of his guilt would be better submitted to trial, where Johnson's statements were not submitted to the court."

Defendant notes the record shows Appleton had the recordings of the jailhouse phone calls between defendant and Johnson but failed to submit them to the trial court, even though defendant specifically cited several of the phone calls in his motion. Citing *People v. Bridges*, 2017 IL App (2d) 150718, ¶ 9, 87 N.E.3d 441, defendant argues Rule 604(d) demands outside-the-record factual allegations be supported by an affidavit.

¶ 56      The State argues remand is not required here based on the record. We agree. In *People v. Shirley*, 181 Ill. 2d 359, 369, 692 N.E.2d 1189, 1194 (1998), our supreme court indicated

- 19 -

Rule 604(d) must not be applied "so mechanically as to require Illinois courts to grant multiple remands and new hearings following the initial remand hearing." According to the court, if "the defendant was afforded a full and fair second opportunity to present a motion for reduced sentencing, [there is] limited value in requiring a repeat of the exercise, absent a good reason to do so." *Shirley*, 181 Ill. 2d at 369. However, the court explicitly stated its "holding in no way retreats from this court's call for strict compliance with our rules." *Shirley*, 181 Ill. 2d at 370.

¶ 57 The Third District in *People v. Evans*, 2017 IL App (3d) 160019, ¶ 24, 72 N.E.3d 421, has stated *Shirley* "stands for the proposition that where a defendant receives a full and fair hearing, technical noncompliance with Rule 604(d) need not give rise to multiple remands."

¶ 58 In its brief, the State cited this court's recent order in *People v. Kocher*, 2021 IL App (4th) 200610-U, as persuasive authority to support its position. The defendant in *Kocher* entered a guilty plea and then tried to withdraw it. *Kocher*, 2021 IL App (4th) 200610-U, ¶ 2. This court remanded the case for compliance with Rule 604(d). *Kocher*, 2021 IL App (4th) 200610-U, ¶ 2. On remand, an assistant public defender was assigned to represent the defendant. Several weeks later, the assistant public defender filed an amended motion to withdraw the defendant's guilty plea and a Rule 604(d) certificate. *Kocher*, 2021 IL App (4th) 200610-U, ¶ 13.

¶ 59 The amended motion stated the defendant was asserting his decision to plead guilty resulted from the ineffective assistance of his trial counsel. The defendant specifically claimed the following: (1) he asked his trial counsel to file a motion for substitution of judge, which counsel failed to do; (2) his trial counsel only spoke to him one time outside of court; (3) he was only able to speak with his trial counsel at court appearances; (4) his trial counsel asked for continuances without consulting or informing him; and (5) his trial counsel never reviewed discovery with him despite his requests. *Kocher*, 2021 IL App (4th) 200610-U, ¶ 13. The defendant's appointed

counsel failed to attach an affidavit or any exhibits in support of the outside-the-record factual allegations in the motion. *Kocher*, 2021 IL App (4th) 200610-U, ¶ 13.

¶ 60 At a hearing on the defendant's amended motion, the defendant testified his trial counsel had never met him in person outside the courtroom, had only spoken to him about the case during court proceedings, and had never discussed the case with him at all. The defendant also testified he told his trial counsel on three separate occasions he wanted to go to trial, but his trial counsel merely shrugged. Finally, the defendant testified he felt pressured to accept the plea agreement because his trial counsel was not going to listen to him. *Kocher*, 2021 IL App (4th) 200610-U, ¶ 14.

¶ 61 The State called the defendant's trial counsel, who disputed all of the defendant's testimony. Trial counsel testified he recommended the defendant accept a plea but did not force the defendant to do so. According to trial counsel, the main factor in his recommendation was the State's evidence, which included self-incriminating statements by the defendant admitting sexual contact with the child victim, statements from witnesses who had interviewed the child victim about the defendant's conduct, and forensic evidence that showed the defendant was a "potential contributor" to DNA found in the child victim's underwear. *Kocher*, 2021 IL App (4th) 200610-U, ¶ 16.

¶ 62 The trial court denied the defendant's motion to withdraw, finding the defendant's testimony did not make sense. The court also found the trial counsel's testimony was much more credible than the defendant's testimony. The court found the defendant did not plead guilty because of pressure or force. Instead, the court believed the defendant pled guilty because of the overwhelming evidence against him and a favorable sentence cap of 23 years. *Kocher*, 2021 IL App (4th) 200610-U, ¶ 16.

¶ 63    On appeal, the defendant argued his appointed counsel failed to comply with Rule 604(d), in part, because his trial counsel failed to file an affidavit supporting the allegations of ineffective assistance of trial counsel. *Kocher*, 2021 IL App (4th) 200610-U, ¶ 22. Relying on both *Shirley*, 181 Ill. 2d at 363-66, and *Evans*, 2017 IL App (3d) 160019, ¶ 24, this court held remand for compliance with Rule 604(d) was not required based on the facts of the case, stating:

> "Like the defect in *Shirley*, we find that [remand counsel's] failure to file an affidavit in support of [the] defendant's claims constitutes a technical rather than a substantive error. Despite this error, [the] defendant was not deprived of the due process protections that Rule 604(d) was intended to provide. *** At the hearing on [the] defendant's motion, he was provided a meaningful opportunity to present evidence in support of these assertions, and he did so. ***

> Despite [remand counsel's] failure to file an affidavit, [the] defendant was provided a full and fair second opportunity to present his claims of error to the trial court. During the hearing on [the] defendant's motion, the trial court was presented with evidence from which it could assess all of [the] defendant's allegations of ineffective assistance arising *dehors* the record. The trial court rightly determined that no relief was warranted. Thus, a second remand requiring a second hearing on [the] defendant's claims would be an empty and wasteful formality." *Kocher*, 2021 IL App (4th) 200610-U, ¶¶ 31-32.

¶ 64    In the case *sub judice*, defendant only argues Appleton did not comply with Rule 604(d) because he did not attach an affidavit or supporting evidence regarding jailhouse phone calls between defendant and Johnson. The situation here is distinguishable from what happened in *Bridges*, 2017 IL App (2d) 150718, ¶¶ 2-4, where the defendant's attorney did not attach an

- 22 -

affidavit or other evidence to support the outside-the-record factual claims included in the defendant's motion to withdraw and did not provide evidence on the claims at an evidentiary hearing.

¶ 65        In this case, Appleton presented evidence on defendant's claim via defendant's testimony at the July 21, 2022, hearing on defendant's motion to withdraw his guilty plea. Defendant was in an excellent position to provide testimony regarding any inculpatory statements Johnson made during their phone conversations. However, when defendant was asked what Johnson said to him regarding the case, defendant said Johnson said she "felt bad about [defendant] being locked up and that she wanted to turn herself in." Appleton then asked defendant if he believed she was going to turn herself in to the authorities. Defendant said at one point he did think Johnson was going to turn herself in, but she never did.

¶ 66        Defendant also testified Evans—to his knowledge—never reviewed the jail phone calls between defendant and Johnson. Defendant claimed Evans would not be able to know what important exculpatory evidence was in the phone calls if she did not review them. However, defendant testified Evans met with Johnson to discuss the case and told defendant about the meeting. Evans said Johnson asked her what would happen if Johnson said she did it and turned herself in. Evans responded she would be locked up.

¶ 67        Considering defendant testified about his phone calls with Johnson and Johnson's meeting with Evans and did not testify Johnson admitted actually hurting M.C., we believe it would be an empty formality to require this case to be remanded again. We will not remand this case so an attorney can decide whether to attach transcripts of phone calls between defendant and Johnson when defendant's testimony addressed what Johnson said on these phone calls. While Johnson may have felt bad because defendant was in jail, the evidence, including defendant's

testimony, does not show Johnson inculpated herself regarding M.C.'s death.

¶ 68                    B. Motion to Withdraw Defendant's Guilty Plea

¶ 69          We next address defendant's argument the trial court erred by denying his motion to withdraw his guilty plea. A defendant does not have an absolute right to withdraw a guilty plea. *People v. Hughes*, 2012 IL 112817, ¶ 32, 983 N.E.2d 439. Instead, the defendant must show his guilty plea results in a manifest injustice under the facts of the case. *Hughes*, 2012 IL 112817, ¶ 32. The burden is on the defendant to demonstrate sufficient grounds to allow withdrawal of the plea. *People v. McIntosh*, 2020 IL App (5th) 170068, ¶ 39, 146 N.E.3d 813. "Withdrawal is appropriate where the plea was entered through a misapprehension of the facts or of the law or where there is doubt as to the guilt of the accused and justice would be better served through a trial." *Hughes*, 2012 IL 112817, ¶ 32.

¶ 70          When reviewing a trial court's decision to deny a motion to withdraw a guilty plea, reviewing courts look to see whether the trial court abused its discretion. *Hughes*, 2012 IL 112817, ¶ 32. A trial court has abused its discretion if the court's decision was "arbitrary, fanciful, or unreasonable to the degree that no reasonable person would agree with it." *People v. McGath*, 2017 IL App (4th) 150608, ¶ 55, 83 N.E.3d 671 (quoting *People v. McDonald*, 2016 IL 118882, ¶ 32, 77 N.E.3d 26).

¶ 71          On appeal, defendant argues he should have been allowed to withdraw his guilty plea for two reasons. Defendant asserts his plea was not knowing and intelligent because Evans provided ineffective assistance of counsel by improperly advising him about the nature and consequences of the State's plea offer. Defendant also alleges his guilty plea was not voluntary. Instead, he asserts his plea was the result of coercion. We address these arguments in turn.

¶ 72                    1. *Knowing and Intelligent Plea*

¶ 73 Defendant claims his guilty plea was not knowing and intelligent based on his assertion Evans was constitutionally ineffective because she did not understand the nature and consequences of his guilty plea and failed to give him proper advice. As previously stated, the burden is on the defendant to demonstrate sufficient grounds for withdrawing his guilty plea. *McIntosh*, 2020 IL App (5th) 170068, ¶ 39.

¶ 74 Defendant clearly had a sixth amendment right (U.S. Const., amend. VI) to the effective assistance of counsel while entering his guilty plea. *Hughes*, 2012 IL 112817, ¶ 44. Further, this court has held inadequate advice from counsel prior to entering a guilty plea is a possible basis for withdrawing a guilty plea. *People v. Glover*, 2017 IL App (4th) 160586, ¶ 39, 85 N.E.3d 815. However, according to the Illinois Supreme Court:

> "To establish a claim of ineffective assistance of counsel in the plea process, the defendant must show counsel's performance was deficient and that the deficient performance resulted in prejudice. [Citations.] More specifically, a defendant must prove that counsel's performance was objectively unreasonable under prevailing professional norms and that there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *Hughes*, 2012 IL 112817, ¶ 44 (quoting *Strickland v. Washington*, 466 U.S. 668, 694 (1984)).

"It is defendant's burden to establish that his plea was not knowing due to counsel's deficiency" and a reasonable probability exists that, but for counsel's errors, he would have insisted on going to trial. *Hughes*, 2012 IL 112817, ¶¶ 62-63.

¶ 75 "In order to establish deficiency, a defendant must prove that counsel's performance, as judged by an objective standard of competence under prevailing professional

norms, was so deficient that counsel was not functioning as the 'counsel' guaranteed by the sixth amendment." *People v. Manning*, 227 Ill. 2d 403, 416, 883 N.E.2d 492, 501 (2008). Further, "[i]n attempting to establish this deficiency, a defendant must overcome the strong presumption that the challenged action, or lack thereof, might have been the product of sound trial strategy." *Manning*, 227 Ill. 2d at 416.

¶ 76      According to defendant's argument, Evans misapprehended the law and misadvised him regarding the nature of the plea. Defendant also alleges Evans failed to advise him he could not challenge his sentence on appeal after entering a negotiated guilty plea. Further, defendant asserts a reasonable probability exists he would have insisted on going to trial absent Evans's unreasonable assistance. He contends rejecting the State's plea offer would have been a rational decision.

¶ 77      In *People v. Veach*, 2017 IL 120649, ¶ 48, 89 N.E.3d 366, the Illinois Supreme Court held a reviewing court "should carefully consider each ineffective assistance of counsel claim on a case-by-case basis" to determine whether the claim can be decided on direct review. The court noted that "ineffective assistance of counsel claims may sometimes be better suited to collateral proceedings but only when the record is incomplete or inadequate for resolving the claim." *Veach*, 2017 IL 120649, ¶ 46.

¶ 78      We note this court already remanded this case to the trial court because Evans's Rule 604(d) certificate failed to strictly comply with the rule. On remand, this court directed the trial court to appoint defendant new counsel and conduct further proceedings consistent with Rule 604(d), including a hearing on any motion defendant's new counsel might choose to file and the filing of a proper Rule 604(d) certificate. See *Cutler*, 2021 IL App (4th) 190443-U, ¶¶ 47-49. On remand, the trial court appointed Appleton to represent defendant, Appleton filed a motion to

withdraw defendant's guilty plea, and the court held a hearing where defendant was allowed to testify and the defense could have presented evidence supporting defendant's motion to withdraw his guilty plea. Appleton could have called Evans as a witness but chose not to do so.

¶ 79　　　As a result, the record before this court is still inadequate to determine whether Evans misapprehended the law, misadvised defendant regarding the nature of the plea, and/or failed to advise him he could not challenge his sentence on appeal because he was entering a negotiated guilty plea. Therefore, pursuant to *Veach*, we decline to make a determination whether Evans understood the law, misadvised defendant regarding the nature of the plea, and/or failed to advise him of the consequences of his plea.

¶ 80　　　However, our analysis cannot end there because the question before this court is whether the trial court erred in denying defendant's motion to withdraw his guilty plea. Defendant argued his guilty plea was not knowingly entered because his counsel was ineffective. As stated above, the record is inadequate to determine whether Evans was ineffective regarding her understanding of the law and advice she gave or failed to give defendant. Although not raised by defendant, the record is also inadequate to determine whether Appleton was ineffective for failing to call Evans as a witness at the hearing on defendant's motion to withdraw his guilty plea. Therefore, because the record does not establish defendant's guilty plea was not knowingly entered, we will not disturb the trial court's ruling denying defendant's motion to withdraw his guilty plea based on this argument. However, pursuant to *Veach*, we decline to make a ruling regarding the effectiveness of Evans.

¶ 81　　　　　　　　　　　2. *Coercion*

¶ 82　　　Defendant also argues the actions of the State, Evans, and the trial court related to the denial of his motion to continue and the plea hearing placed undue pressure on him, causing

coercion that resulted in an involuntary plea. Defendant cites this court's decision in *People v. Griffin*, 16 Ill. App. 3d 351, 353, 306 N.E.2d 63, 64-65 (1973), for the proposition a guilty plea is void if it is induced by threats, coercion, or force, which deprives the plea of its voluntary character.

¶ 83        According to defendant, several factors contributed to him being coerced into pleading guilty. First, the State informed defendant and the trial court a few weeks before his scheduled trial that defendant was eligible to be sentenced to between 20 and 100 years on the first three counts of the indictment against him instead of 20 to 60 years, as defendant had previously been told. Second, the State provided a large amount of discovery to defendant during the week before trial. Third, Evans told him she was going to ask to have his trial continued because she otherwise would not be able to review the discovery before his trial. Fourth, the court denied defendant's motion for a continuance. Finally, Evans allegedly advised him to accept the State's plea offer because he was likely to receive a sentence on the low end of the sentencing range, which defendant claims he interpreted to be 20 years.

¶ 84        We have no doubt defendant—like most defendants—was experiencing stress when deciding whether to accept the State's plea offer or proceed to trial, especially when the trial court denied the defense motion for a continuance. However, defendant has not presented any legal argument or provided any authority to support his claim the circumstances in this case amount to coercion, resulting in an involuntary guilty plea.

¶ 85        Pursuant to Illinois Supreme Court Rule 341(h)(7) (eff. Oct. 1, 2020), an appellant's brief shall include "[a]rgument, which shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on. *** Points not argued are forfeited and shall not be raised in the reply brief, in oral argument, or on petition for rehearing." Based on Rule 341(h)(7), we find defendant forfeited his claim his plea was

- 28 -

involuntary because he was coerced into entering the plea. Defendant has provided no real argument or authority to establish either the State, the trial court, or Evans did anything improper or inappropriate before defendant entered his plea which would justify us determining his plea was coerced and, therefore, involuntary.

¶ 86 Regardless of forfeiture, we note the trial court substantially complied with the requirements of Illinois Supreme Court Rule 402 (eff. July 1, 2012). Further, after defendant stated he accepted the State's plea offer, the court took a recess to allow defendant to consult with Evans before defendant formally entered his guilty plea. Defendant indicated he understood by pleading guilty he was telling the court he was, in fact, guilty and would not receive another hearing regarding his guilt or innocence. Further, defendant told the court no force, threats, or promises had been made to cause him to enter his guilty plea. He also stated he was acting pursuant to his own free will and believed pleading guilty was what was best for him. Only then did the court find defendant understood the nature of the charge and possible penalties and the plea was voluntary.

¶ 87 We will not disturb the trial court's denial of defendant's motion to withdraw his guilty plea based on defendant's assertion of coercion because defendant forfeited this argument.

¶ 88                                     III. CONCLUSION

¶ 89 For the foregoing reasons, we affirm the trial court's judgment.

¶ 90 Affirmed.